Good morning, Your Honors. May it please the Court, my name is Renee Orth and I'm here on behalf of Appellant Zagfly, Inc. I'm also the founder of Zagfly, Inc. I'd like to start by just telling you why I started this or how it came about. About five years ago, I was first introduced to Facebook, and I was just awestruck by the idea that the abstract idea of humanity was coming into being in a real and concrete way. And I wondered what could this new technology make possible in the world when a friend of mine sent me Good Karma on Facebook. It was just an Eastern-inspired icon that showed up on my page, and I thought, we should be able to create real karma in the world with this because it's so powerful. And that's the seed that then blossomed into this vision of an online platform that would harness the power of the Internet, put it together with the power of capitalism, bring consumers together online in a way that they could use their buying dollars to change the world. And we could leverage the power of wealthy individuals and institutions that would match their donations. We could bring the donors and the buyers together with nonprofits that could market their projects and really inspire people to want to give to them instead of to other competing nonprofits. And so it was this vision of an engine for change, and that is what Zagfly is supposed to be. So you can imagine my disappointment when I read that the tax court decided that our ultimate aim was maximizing financial profit. That really couldn't be further from the truth other than the fact that profit comes from the Latin perfectus, which means to progress, to move forward. And in that sense, we're definitely about profit. We're about social evolution, not about financial gain. The question is whether what you're doing is, in fact, an unrelated business, which is, at least in the regulations, if you're all simply raising money to devote to charity, as it says, unrelated refers to any trade or business, the conduct of which is not substantially related, aside from the need of the organization for the income or funds. You're essentially using a commercial venture to make donations to charity, and under the regulations, that's not permitted. So you're referring to the feeder organization provision? No, I'm not talking about a feeder organization. I'm talking about Regulation 1.513-1D2. That seems to me, as I understand it, I'm not a tax expert, and I'm sure you've studied this carefully, but that's what the tax court concluded, was that you fall within the parameters of that regulation, and your primary purpose is a commercial venture. And it's not enough just to take the money and give it to charity. I would say that the distinction the tax court missed is the difference between means and ends. That Zagfi will use profits as a tool to empower its users to create social change, but the finances, the money, is the means, it's not the end, it's not the purpose. And if I can quote from B.S.W. Group Inc. v. Commissioner, an organization's purpose is revealed not by the nature of the activities themselves, but by the purpose toward which the organization's activities are directed. And likewise, in Golden Rule Church Association v. Commissioner, the statutory language treats as a touchstone, not the organization's activity, but rather the ends to which that activity is undertaken. I don't understand something. Why do you want a 501c3 classification? As I understand the operation of your flower-selling business, you're a broker for selling flowers, correct? That's one part, that's one aspect. So you sell flowers at $100 a bouquet. It costs you $50 to buy the flowers. That's a deductible business expense. It costs you $30 to pay the salaries of your employees, to pay the overhead, and to pay the rest of the things. That's a deductible business expense. There's $20 of profit. You give that to a charity. That's a charitable deduction. No tax on you. Why don't you just operate that way? That's an excellent question, and I think that brings us to a very important point, which is that exempt status has two pieces to it. There is the tax deductibility of your income, but there's also that your donors can deduct their donations to you. So an important piece of what we want to create is to cover our operating expenses by donor contributions, so that when people come to us, we can offer them not just the 20% of profit, but possibly your entire, maybe even 200% of your tax credit. Why don't you tell the donors, instead of coming to you, you say, go to Red Cross and give them the money. That's what we're going to do, and get the same deduction, no problem. Well, they can do that with their matching funds, and that's what we would envision, is just they would donate the matching funds directly to the nonprofit that they want to match to. But in terms of our operating costs, of operating the flower business, and also, if I can just take a sidestep here, we also envision doing travel reservations, so that when people want to buy airline tickets, hotels, they come to us, and the profits go to offsetting carbon emissions. And so in some instances, some of our projects, the business would be... The donations go to offsetting carbon emission credits. Is that a known charity? That's avoiding environmental degradation, I would say. Sierra Club, all those are nonprofits, so I expect that that would... So they would go to Sierra Club. Well, it could be, it could go to any number of nonprofits. Why can't you just tell the prospective buyer, we're going to give you a 20% discount. Take that money and send it to Sierra Club. Well, we would prefer to, if we're going to put all this effort into creating this engine for change, we'd like to have some say over where that money goes to. Oh, you want to say where it goes. I thought you wanted the individual purchaser of the flowers to say where it was going to go. Well, our vision has always been that we would vet the nonprofits that we work with. So, for example, we probably wouldn't facilitate donations to the NRA just because of our own political leanings. So that would be specific to certain charities. Probably not wealthy universities, private schools, things like that. Okay, I got you. So do you agree that you need to comply with 26 CFR Section 1.501C1, subsection C1 of that section? Because subsection C1 says that an organization will qualify for 501C3 status only if it engages primarily in activities which accomplish one or more exempt purposes. Do you agree that you have to comply with that? Absolutely. So it seems to me that that's where the tax court thought that you failed. Even if we think you're right, that the tax court was confused about what your real purpose was, it still seems to me that the tax court said that you were engaged primarily in an activity that did not accomplish an exempt purpose, and that was because the tax court thought your primary activity was flower sales. How is that wrong? Again, I would come back to the question of means versus ends, that purpose isn't necessarily just because some people sell flowers in order to make a financial profit doesn't mean that that's our purpose in selling flowers. But what is our standard of review for reviewing the tax court's evaluation that your primary activity was flower sales and that flower sales don't accomplish an exempt purpose? I'm a little unclear exactly on that. I do think that with regard to the administrative record and its reading of that, it's clearly erroneous. But in terms of the law that the tax court applied, which we haven't gotten into the commerciality doctrine, which is what I believe the tax court was applying to us, which I think is an unconstitutional usurpation of Congress's legislative authority. But I think that would be under a more lenient standard of review. On the commerciality doctrine, where do you think the tax court relied on that doctrine? Can you point to a part of the decision that you think was citing a commerciality doctrine? Well, it specifically said that we would be competing with for-profits in a commercial sphere. And I'm sorry, I don't have the decision in front of me right now. And so the fact that we would be engaged in a sales business and be competing with commercial enterprises was at the core of its decision. And in what sense is that unconstitutional? Because Congress in 1950, when it passed the Revenue Act, specifically addressed the question of non-profits engaging in for-profit activity. And it decided to tax unrelated business income, and it decided to remove feeder organizations from tax-exempt status. It never talked about commerce. Commerce doesn't appear anywhere in either the underlying regulations or the original act. Congress never talked about competition with for-profits as not being permitted. So, I mean, aren't you just saying that the agency has an unreasonable interpretation of the statute? Isn't this a Chevron argument? Why is this a constitutionality issue? Well, it is. I mean, it's both, because the IRS is required to follow the law, and by expanding the law into areas beyond what Congress said, and in some ways in conflict with what Congress said, that's a unconstitutional usurpation of the legislative authority. So I think at the same time. Your time is up. Thank you very much, Ms. Orr. Thank you. Thank you, Your Honor, and may it please the Court. I'll just address a few of the points that you actually raised. I'd like to ask you a question that has been in the back of my mind. I'm from San Francisco. We have an organization there called Delancey Street. Delancey Street has been very successful in rehabilitating convicts, and we send them there. When I was on the Superior Court, we sent them there rather than San Quentin. Delancey Street runs a restaurant down on the waterfront, a very good restaurant. Some of the people there who serve you are convicts on parole. They make money out of it, right? And yet Delancey Street is a 501c3 without any question about it. You can make a donation to them, and it's a charitable donation. They're running a business in competition with Jack's Restaurant because they're selling food at the restaurant. They're making money off it. Why is Ms. Orr's organization any different from Delancey Street? Well, I think, I believe it was Judge Fisher who brought up the fact that the central problem for Zagfly here is that it's an unrelated trade or business. It's unrelated to the exempt purpose here. In the case of Delancey Street, which sounds a little bit like the Living Faith case or the Riker, you know, if I can imagine, I don't know all the facts and circumstances of Delancey Street, but if it is employing some of the convicts or people on probation or whatnot, it is arguably related to getting these people back into society, and there's some underlying connection between the activity and the exempt purpose. But under Regulation 1513-1D2, it specifically says that the, when it's talking about whether a trade or business is related or not, it's related to the exempt purpose only where the conduct has a causal relationship, there's a causal nexus. So if Ms. Orr's organization were selling flowers for the purpose of fomenting disabled people who grew flowers, and those were the flowers that they were selling, then there would be some sort of relationship between the selling of the flowers and their underlying purpose in rehabilitating disabled flower growers. I'm not sure. I mean, the regulation says that the causal nexus cannot be based on the production of income for the exempt purpose, and that's precisely what we have here. So it has to be some sort of relation between the object of the charitable organization and the business that they're conducting. Yes, yes. For example, this court's decision going as far back as Ralph Eaton, it discusses a case in Ralph Eaton in which a college had a bookstore, and the books that were being sold there, the profits from that, were going back into the college, and it was serving an educational purpose. And you see this all the time, for example, with museums, most of which are 501c3s. They have a museum shop. They sell art books that are part of the purpose of educating the public about art. They sell posters and whatnot. And that would be a related purpose, and it would be related income, so they wouldn't be taxed on that under UBIT, certainly. But if they sold, for example, also candy bars and Diet Cokes, those items might be subject to something like UBIT because they are unrelated and they are insubstantial. And the key here is that the activity that Zagfly is engaged in is substantial and unrelated. So Zagfly says that its purpose was actually to empower people to use their purchasing to change the world.  If you look at the record, there are several points in the record which Zagfly flat out says. For example, on excerpts of record page 40, it summarizes its purpose as, quote, our primary purpose is to allow members to direct the proceeds of their purchases to the charitable cause of their choice. That's on page 40. That's part of its initial application to the commissioner. Also, it's part of its application on page 33 of the record. It specifically, the application specifically asks, you know, what is the activity of this organization. But I think you're responding with evidence that supports the purpose that the tax court attributed, which was really to raise money for donations. But there was a lot of other language in the application about this other purpose. And am I right that the tax court never really engaged with that directly? It didn't, and I don't think it had to. Why is that? The fact that there may be other exempt purposes is not just positive. The question is, what is the primary purpose? And there's ample evidence in the record to support that, specifically at pages 32, 70, 72, and 112 where Zagfly says, look, this is what we're going to do. We're going to sell flowers initially. If that succeeds, then we're going to move on to other products and services on page. So does this have to do with our standard of review, that as long as there's some evidence to support what the tax court said, we have to affirm? Do you have any case that says the tax court doesn't have to at least consider what the organization says its primary purpose is? Well, as I pointed out in the record, it has said its primary purpose is to sell items and let people get what they want. Well, I think it said that was its activity, but I think the very first sentence of the application has its other purpose. In part about purposes. Well, you can infer the purpose of an organization by its activities, and that's, I think, what the tax court was getting at. And if there is ample evidence to support that, as there is here, then clear error would not upend that decision, I think. And with respect to commerciality and UBIT, I would take issue with the notion that those are extra-legislative kind of concepts because Treasury Regulation 1501C3-1E makes it quite clear that if an organization is operated for the substantial or primary purpose of carrying on an unrelated trade or business, then you're not exempt in the first place, in which case those organizations would not be subject to UBIT in the first place. So I don't think that UBIT was sort of the final answer on how you analyze these cases. With respect to commerciality, it's quite clear under 1501C3-1C that where more than an insubstantial part of the activities are not in furtherance of the exempt purpose, then it's not operated exclusively. And so to look at commerciality is, I think, a key question. It's not dispositive in itself, but if it's substantial and if it's unrelated activity, then it's not an exempt organization. No further questions? I'll sit down. Thank you. Thank you. Thank you very much. The case of Zagfly versus CIR is now marked submitted. Thank you for your...
judges: Fisher, Bea, Friedland